# IN THE UNITED STATES DISTRICT COURT
## EASTERN SECTION OF TENNESSEE

DOUG AND MIKA RACE,

    Plaintiffs,

v.

                                                    Civil Action No.: _____
                                                    JURY DEMANDED.

CITY OF PIGEON FORGE, TENNESSEE,
MAYOR DAVID WEAR, in both his official and
personal capacities, as well as all other Defendants not
yet known to the Plaintiffs at this time,

    Defendants.

## COMPLAINT

Plaintiffs, through undersigned counsel, hereby submit this Complaint for damages for violations of federal constitutional rights and in support of the same would set forth the following:

## PARTIES

1. Plaintiffs are married and are residents of Ohio.

2. Defendant City of Pigeon Forge is a municipality located within the bounds of Sevier County, Tennessee.

3. Defendant Mayor David Wear is the Mayor of the City of Pigeon Forge and is its chief executive officer. Mr. Wear is believed to be a resident of Sevier County, Tennessee.

## JURISIDICTION AND VENUE

4. Both jurisdiction and venue are proper before this Honorable Court as the Plaintiffs are completely diverse from the Defendants. 28 U.S.C. § 1332. In addition, jurisdiction and venue is proper before this Court as this matter involves federal

question. 28 U.S.C. § 1331. This Court also has authority to review state law under 28 U.S.C. § 1367.

## FACTS GIVING RISE TO CAUSE OF ACTION

5. On August 17, 2022, Doug and Mika Race (hereinafter "The Race's) closed on their investment property located at 362 Ogle Drive, Pigeon Forge, Tennessee 37863. The property was zoned C-6 and located within walking distance to the parkway in Pigeon Forge, a major tourist attraction. The property was in disrepair including needing a new roof and necessary upgrades in order to be able to enter the overnight rental market and the Races and their family members spent months traveling back and forth from their home located in Chillicothe Ohio.

6. Then on March 6, 2023, a neighbor of the Race's informed them that she had been watching them for months and that previously in October of 2021, she had received a doorhanger and gone to a City of Pigeon Forge's meeting and that their property was to be demolished, and a road was to be put in. The Races, obviously stunned, drove immediately to the City of Pigeon Forge in which the Assistant City Manager, Eric Brakins, confirmed this shocking information. Even more shocking is that on March 7, 2023, Mrs. Race called the Mayor of the City of Pigeon Forge, David Wear, and recorded the phone call. Mayor Wear said he had been watching the Race's for months work on their property, but the decision had been made, and their home was to be demolished for a road.

7. Mr. and Mrs. Race believed at all times that the road had not been decided upon and that one of the roads would just take a portion of their property.

8. The City of Pigeon Forge (hereinafter "Pigeon Forge") operates under the City Manager-Commission Charter *Tenn. Code § 6-19-101*[1]. The Charter provides for a board of city commissioners under *T.C.A. § 6-20-201*. The board either elects one of its members as the mayor, or the mayor is popularly elected to a designated commissioner position on the board. *Tenn. Code Ann. § 6-20-209*. But the commissioners can act officially only by majority vote of the board. Further, a municipal corporation is not entitled to acquire a fee in land by condemnation where it already has an easement which is sufficient for the purpose needed. *Madisonville v. Cagle*, 159 Tenn. 600, 21 S.W.2d 385 (1929).

9. The city charter requires that specified acts be taken through the adoption of an ordinance, the city has no authority to alter the manner of acting and reliance on a general provision of the charter cannot excuse its failure to conform to the specific or express requirements of the charter, which are considered mandatory. "The rule . . . is, if the power to pass ordinances upon any specific subject is given, the power so granted cannot be enlarged or changed by the general clause . . . "*Mayor and City Council of Nashville v. Link*, 80 Tenn. 499, 508 (1883). For the city to ignore the distinction drawn by a charter between a resolution and an ordinance result in the act being *ultra virus*. E.g., *Terry v. Commissioners of Cookeville*, 184 Tenn. 347, 198 S.W.2d 1010 (1947).

10. The City of Pigeon Forge acted *ultra vires,* and any Orders should be void. Undersign counsel for the Races recently received multiple documents from Pigeon Forge due to an Open Records Request (herein "ORR"). Pigeon Forge

---

[1] The UT Municipal Technical Advisory Service has now unlawfully listed the City of Pigeon Forge's Charter as being formed under the General Law Manager-Commission T.C.A. § 6-18-101 et seq. which is not true. https://www.mtas.tennessee.edu/system/files/codes/combined/PigeionForge-code.pdf .

provided a photocopy of a door hanger which was purported to have been placed on each property along the route that "could possibly be impacted" and in general states that Pigeon Forge would hold a public meeting on Tuesday, October 26, 2021, from 5:00 PM to 7:00 PM, and that the purpose of the meeting was to discuss the construction of a north-south local road with sidewalks to provide a local route that is an alternative to the Parkway and better serve the residents of Pigeon Forge". The door hanger also depicted a map of the "general project location." In the ORR, Pigeon Forge edited several documents in order to provide their own account of what had occurred in 2021 adding the following:

> "9/27/2021 City Council Work Session, In addition to normal Media announcement for City Meetings, City staff placed door hangers on each property along the route that could possibly be impacted, 10/21/2021. A public Meeting to accept Public Comments for the Westside Connector 10/26/2021 (minutes below). City Council held another Work Session on 11/10/2021 to review the Public Comments and possible routes. City Council Meeting 11/22/2021 Voted to approve the attached engineering agreement and route."

11. While the General Assembly did not provide a definition of what adequate notice means. The Tennessee Supreme Court, however, did address the issue in *Memphis Publ'g Co. v. City of Memphis, 513 S.W.2d 511 (Tenn. 1974)*. In that case, the Court wrote:

> "We think it is impossible to formulate a general rule in regard to what the phrase 'adequate public notice' means. However, we agree with the Chancellor that adequate public notice means adequate public notice under the circumstances as would fairly inform the public."

*Memphis Publ'g Co.*, 513 S.W.2d at 513; *see also Kinser v. Town of Oliver Springs*, 880 S.W.2d 681 (Tenn. App. 1994).

12. In 1999, the Tennessee Appellate Court found that the town of Englewood had violated the Sunshine Act when the public announcement read: "Letter to State concerning HWY 411." The Court found "a more substantive pronouncement stating that the

commission would reconsider which alternative to endorse for Highway 411 should have been given." *Englewood Citizens v. Englewood, No. 03A01-9803-CH-00098 (Tenn. Ct. App. Jun. 24, 1999).* However, that being said it does need to be mentions that according to the Pigeon Forge Minutes for November 22, 2021, there was a vote to hire CDM Smith[2] for the Westside Connector for $1,093,000.

13. The meeting was about the town selecting the route for a highway construction project – one would bypass the town or one that would widen a two-lane road into a four-lane road. The notice said: "Letter to the State concerning HWY 411." (This notice is so lacking that it arguably raises questions of motive on the part of the City). *T.C.A, 6-54-107(b).*

14. The Court must first consider whether Pigeon Forge has the statutory right to take. *See Pickler v. Parr*, 138 S.W.3d 210, 213 *(Tenn. Ct. App. 2003).* The Tennessee Constitution prohibits the taking of private property for private purposes. *Tenn. Const. art. I § 21.* No inference may be made to twist Pigeon Forge into an existing delegation of authority to take. *See Tenn. Code Ann. § 28-17-101.*

15. *Tenn. Code Ann. § 13-16-207 (f)* requires a local government to obtain the required certificate before filing its complaint. Further, the Complaint failed to comply with statutory requirements that the petition fully describe the project to be constructed and that the petition recite all the statutory authority for condemnation and in addition the Tennessee Legislature did not delegate the power of eminent domain to the City of Pigeon Forge.

---

[2] CDM Smith has a long and storied history including the fact that its subsidiary CDM Federal Programs Corporation agreed to pay $5.65 million to settle claims that they overcharged the U.S. Navy on two wastewater system contracts. The settlement resolved claims filed by Vincent Bevilacqua under the whistleblower provisions of the False Claims Act.

16. In light of the directive in *Tennessee Code Annotated § 29-17-101* that the power of eminent domain should be used "sparingly" and be "narrowly construed so as not to enlarge, by inference or inadvertently, the power of eminent domain."

17. *Article 1, section 21* of the Tennessee Constitution states "[t]hat no man's . . . property [shall be] taken, or applied to public use, . . . without just compensation being made therefore." The Tennessee Supreme Court has construed *article 1, section 21* of the Tennessee Constitution as offering protections co-extensive with those of the Takings Clause in the Fifth Amendment. *Phillips v. Montgomery Cty.*, *442 S.W.3d 233, 244 (Tenn. 2014)*.

18. In response to the US Supreme Court ruling in, *Kelo v. City of New London, 545 U.S. 469 (2005)*, also see, *Governor Phil Bredesen signed Public Act 863* (the "Act"). The Act begins with a reaffirmation that Tennessee's Constitution, in conjunction with the Fifth Amendment of the Federal Constitution, protects the right of an individual to own property and to be free from capricious and arbitrary takings of that property by the government. *Id*. Essentially, the General Assembly turned takings jurisprudence on its head and effectively foreclosed the possibility of an outright *Kelo* condemnation in Tennessee.

19. It is true that government may seize an interest in real property for the construction of roads, highways, bridges, public facilities, or other forms of public transportation. *Tenn. Code Ann. § 29-17-102(b)(1))*. However, the government may not invoke the power of eminent domain unless it was unable to obtain the property, or any comparable alternative property, after undertaking "good faith negotiations." *2006 Tenn. Pub. Acts 863 § 3 Ten 13-16-207(f) 2007 Tenn. Code Ann 6-58-101 to 107 (2005)* outlining

comprehensive growth plans) Good faith – 2 Appraisals by independent qualified appraisers *13-16-207(f)(2)*.

## THE CITY OF PIGEION FORGE VIOLATED THE PROCEDURAL MECHANISM FOR EMINANT DOMAIN

20. Tennessee Code Annotated provides that any government holding the power to condemn property and seeking to condemn property must provide the property owner at least thirty days' notice before undergoing any additional steps. *T.C.A. § 13-20-201.* Further, the appraisal report must include the property's best and highest use, the current use of the property at the time of the proceeding and a description of "any other use to which the property is legally adaptable at the time of the taking." *Id. and also see Record.* The City could not by contract and resolution and without ordinance authorize the state to eliminate grade crossing on street subject to jurisdiction of city. *Wilkey v. Cincinnati, N. O. & T. P. R. Co., 47 Tenn. App. 556, 340 S.W.2d 256, 1960 Tenn. App. LEXIS 90.* To wit:

> Construct, improve, reconstruct and reapprove by opening, extending, widening, grading, curbing, guttering, paving, graveling, macadamizing, draining, or otherwise improving any streets, highways, avenues, alleys or other public places within the corporate limits, and access a portion of the cost of such improvements upon the property abutting upon or adjacent to such streets, highways or alleys as provided by title 7, chapters 32 and 33.

21. The eminent domain statues are to be strictly construed, to the extent of the interest that may be acquired by a condemner, and the condemner can take no greater interest in land condemned than is necessary for the proposed use. In the absence of express legislative authority, circuit courts in Tennessee are without jurisdiction to adjudge the fee in lands to a condemner, and unless the statue expressly authorizes the taking of the fee in lands, the appropriation is limited to a mere easement. *10 Tenn. Juris § 71 (2024).*

22. A municipal corporation is not entitled to acquire a fee in land by condemnation where it already has an easement which is sufficient for the purpose needed. *Madisonville v. Cagle*, 159 Tenn. 600, 21 S.W.2d 385 (1929).

## COUNT I – VIOLATION OF 42 U.S.C. 1983 Under the Fifth Amendment of the U..S. Constitution brought under the Fourteenth Amendment

23. Plaintiffs restates paragraphs 1-32 in support of Count I.

24. At all relevant times herein, the Defendants were acting under color of law.

25. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

26. Defendants are liable herein as they acted under the color of law in such a way that deprived the Plaintiffs of the rights, privileges, or immunities guaranteed to them by the Constitution or by federal or state law.

27. Defendants actions alleged herein violate the Plaintiffs due process rights guaranteed by U.S. Const. amend V and XIV as the Defendants deprived the Plaintiffs of their property rights without due process of law.

28. As noted herein the Defendants, without providing adequate notice or just compensation, initiated an eminent domain proceeding to acquire Plaintiff's property. Defendants' taking of the Plaintiffs' property was not for public use but for personal gain.

29. Defendant's actions in taking Plaintiff's property without providing proper notice, a fair hearing, or adequate opportunity to challenge the proposed taking, violated Plaintiff's right to due process under the Fifth Amendment.

30. As a direct result of the Defendants' violation of the Plaintiffs' fundamental rights herein the Plaintiffs have suffered millions of dollars in damages.

31. As a direct result of the Defendants' violation of the Plaintiffs' fundamental rights the Plaintiffs have suffered extreme emotional distress and anguish as they spent their life savings on the property in question and were going to use it as commercial use and personal use. The emotional distress caused by the Defendants unlawful actions have caused the Plaintiffs sleepless nights, nausea, inability to eat, migraine headaches, and nightmares when they are able to fall asleep.

**WHEREFORE PREMISES CONSIDERED THE PLAINTIFFS PRAY FOR JUDGMENT AS FOLLOWS:**

A. Declare that Defendant's actions in taking Plaintiff's property constitute a violation of 42 U.S.C. § 1983;

B. Order Defendants to provide Plaintiffs with damages in the amount of $10,000,000.00 to include emotional damages.

C. For an award of the Plaintiffs' attorney's fees and expenses in this litigation.

D. For a jury to try this cause.

Respectfully submitted,

**THE EGLI LAW FIRM**

<u>s/Russ Egli</u>
Russ Egli, BPR#24408
The Egli Law Firm
11109 Lake Ridge Drive, Fl3
Knoxville, TN 37934
865-274-8872
theeglilawfirm@gmail.com

*Attorney for the Plaintiffs*