| | | |
|---|---|---|
| MIKA RACE & DOUG RACE, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 3:25-cv-34 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| CITY OF PIGEON FORGE, TENNESSEE, | ) | Magistrate Judge Poplin |
| DAVID WEAR, JOHN WEAR, RICHARD | ) | |
| PERRY, DEBBIE PERRY, AND | ) | |
| APPALACHIAN SPRINGS, LLC. | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Judgment on the Pleadings [Doc. 48] by the City of Pigeon

Forge and David Wear and a Motion to Dismiss [Doc. 34] by Appalachian Springs, LLC, Richard

Perry, and Debbie Perry. For reasons that follow, the Motion for Judgment on the Pleadings [Doc.

48] will be **GRANTED IN PART** as to Plaintiffs' public-use Takings Clause claim and **DENIED**

as to all remaining relief requested. The Motion to Dismiss [Doc. 34] will be **DENIED** in full.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Doug and Mika Race claim that through a series of nearby property transactions

and legal maneuverings, Defendants conspired to deprive them of their property at 362 Ogle Drive,

Pigeon Forge, Tennessee (the "Property"), in violation of their constitutional rights. They further

claim the City of Pigeon Forge and the City's former mayor, David Wear, violated their First

Amendment rights by retaliating against them for protected speech.

The First Amended Complaint ("FAC") describes a series of transactions culminating in

the 2019 purchase of 370, 402, and 410 Ogle Drive by Defendant Appalachian Springs, LLC.

[Doc. 14 at ¶¶ 16-17]. Appalachian Springs was formed in August 2019 by Defendant Richard

Perry, and its members include Defendants David Wear (former mayor), John Wear (his brother), and spouses Richard Perry and Debbie Perry. [*Id.*]. At least as early as June 2019, Appalachian Springs and/or its members sought to develop a campground at 370 Ogle Drive. [*Id.* at ¶¶ 18, 32; *Id.* at pg. 59 *et seq.*].

Prior to the purchase by Appalachian Springs, Signature Development, LLC – owned by David and John Wear – had obtained a Storm Water Pollution Prevention Plan for the "Appalachian Springs Trout Farm & Campground Phase II," to be located at 370 Ogle Drive. [*Id.* at ¶ 32; *Id.* at pg. 59 *et seq.*]. Based on the images in Plaintiffs' FAC, the 370 Ogle property appears to abut the subject 362 Ogle Drive Property on three sides, *see* Doc. 14 at 4, and the lots share a driveway. According to Plaintiffs, the plan clearly shows the Property was needed for Appalachian's campground. [*Id.* at ¶ 32].

Plaintiffs purchased the adjacent 362 Ogle Drive Property several years later, on August 17, 2022, intending it for personal and commercial use. [*Id.* at ¶¶ 22, 63]. The Property was in disrepair and needed a new roof and other upgrades to enter the overnight rental market, requiring Plaintiffs and their family members to spend months travelling back and forth from their home and family business in Ohio. [*Id.* at ¶ 23].

Roughly a year and a half after the purchase, on March 6, 2023, Plaintiffs say they received a phone call from a neighbor. She told them that in October 2021, there was a meeting about routes for the proposed Westside Connector, and Plaintiffs' Property was to be demolished for the project. [*Id.* at ¶ 24]. Surprised, Plaintiffs allege they immediately drove to City Hall, where Assistant City Manager Eric Brackins said the same thing. [*Id.* at ¶ 25]. Brackins allegedly told them that in October 2021, he personally placed door hangers in the area, including on the door of the Property, then owned by Barbara McWhorter. [*Id.* at ¶ 26]. According to Brackins, the door hanger depicted

the proposed Westside Connector going through the Property. [*Id.*]. The next day, Mrs. Race called Mayor David Wear. [*Id.* at ¶ 33]. Wear stated the prior homeowner knew the Property was to be condemned and that a map depicting the Westside Connector going through the Property had been hanging at City Hall. [*Id.*].

Plaintiffs say the statements of Wear and Brackins were both false. As to the Mayor's statement, Plaintiffs allege that the map at City Hall did not originally show the Connector going through their Property. According to Plaintiffs, the City directed CDM Smith, the engineering and construction firm hired for the project, to change the road's planned route sometime in 2023. [*Id.* at ¶ 34].

According to exhibits attached to the FAC, the City held a public meeting on October 26, 2021, "to gather public input on the proposed Westside Connector roadway improvement project." [Doc. 14 at 51]. Contrary to Brackins's claim, Plaintiffs allege that neither the door hanger nor the Public Notice Flyer for the meeting show the road going through the Property. [*Id.* at ¶ 26]. A local newspaper, the Mountain Press, covered the October 2021 meeting, reporting that "some of Mayor David Wear's family have been working on property along the southern route with plans to open a campground there." [*Id.* at pg. 57]. According to Plaintiffs' allegations and the article attached as an exhibit, Mayor David Wear claimed to have no financial interest in where the Westside Connector would be located. [*Id.* at ¶ 31, pg. 57].[1] Plaintiffs say this statement was also false, as he was a member of Appalachian Springs and listed on loan documents only three months earlier.

---

[1] Less than three months earlier, on July 6, 2021, Mayor Wear signed a Modification of Deed of Trust as a member of Appalachian Springs. [Doc. 14 at 38] ("personally appeared . . . David Wear . . . who, upon oath, acknowledged themselves to be Members of APPALACHIAN SPRINGS, LLC, . . .).

3

[*Id.*]. The paper reported his father Jerry Wear as saying of one of the routes: "If the road goes through there it will destroy the campground." [*Id.* at pg. 57].

The Mountain Press also published a drawing depicting three possible routes for the planned Westside Connector. [*Id.* at ¶ 29]. None would have required the demolition of Plaintiffs' Property, but all three would have affected the campground that Appalachian Springs has since developed, and one would have affected a rental property owned by Defendant David Wear. [*Id.*].

Two days after the meeting, on October 28, 2021, Assistant City Manager Brackins emailed Jezz Mize, an engineer from CDM Smith who was working on the Westside Connector project and/or a proposal for the project. [*Id.* at ¶ 30; *id.* at pg. 57]. Mize had participated in the public meeting. [*Id.*]. The Assistant City Manager asked Mize if he had time to meet with the Mayor's brother and Appalachian Springs member John Wear "regarding the Campground [that] is being built on the Westside Connector route[.]" [*Id.* at 54]. Sometime after this meeting, Plaintiffs say, the proposed route for Westside Connector was altered to go through the Property instead of the Appalachian Springs campground site.

After learning of the proposed condemnation of their Property, Plaintiffs began attending meetings and contacting the City, believing the location of the Westside Connector had not been decided. [*Id.* at ¶ 35]. They reached out to residents of the City of Pigeon Forge, many of whom allegedly opposed the Westside Connector going through a primarily residential area. [*Id.*]. They began posting on social media platforms about the issue. [*Id.* at ¶ 36]. They allege the City of Pigeon Forge and David Wear "attempted to silence the Plaintiffs," by, *e.g.*, deleting their comments and other residents' comments regarding the Appalachian Springs campground development. [*Id.*]. Plaintiffs attach screengrabs in which platform users state that comments were being deleted from the Mayor and/or the City's public posts. [*Id.*].

4

Plaintiffs next allege that the City of Pigeon Forge violated the procedural mechanisms for exercising eminent domain. [*Id.* at ¶¶ 48-56]. According to Plaintiffs, the City violated its own procedures in selecting the Westside Connector route and/or providing notice of the proposed route, the October 2021 notice was inadequate, a *lis pendens* was not properly filed, and the petition (presumably for condemnation of the Property) did not comply with statutory requirements. [*Id.* at ¶ 37]. They assert the taking of the Property "was a fraudulent taking for the Defendants' use while the taxpayers pay for it." [*Id.* at ¶ 46].

The City filed a Petition for Condemnation on January 12, 2024, in the Circuit Court for Sevier County, Tennessee. [*Id.* at ¶ 48; Doc. 9-1]. Plaintiffs allege they "always wanted to fight condemnation," but were unable to do so because of the alleged conspiracy, as well as the actions of the City's attorney, Nathan Rowell. [*Id.* at ¶ 52]. Plaintiffs show Rowell "consistently insisted" the Races remain silent, citing an email supposedly from David Wear to attorney Rowell. [*Id.* at ¶ 53]. The email actually seems to be directed to the Races, not the City's attorney, stating: "[I]n your continued search for a villain for your next YouTube episode, you conveniently missed the Membership Purchase Agreement in which I sold my interest for $0 to the current owner." [*Id.*].[2]

The FAC goes on to allege that Plaintiffs never agreed to condemnation, "so it was shocking when on June 26th, 2024, while the Races believed they were still fighting and were paying the mortgage the home was bulldozed." [*Id.* at ¶ 54]. In a Declaration attached to the FAC, Mika Race avers the Agreed Order of Possession dated May 6, 2024, was signed by their attorney

---

[2] The email was not filed as Exhibit L, contrary to the citation in the FAC. Exhibit L is an email from Mika Race to Mayor David Wear and does not include the quoted language. [*Id.* at pg. 79-80].

in the condemnation action without their knowledge.[3] [Doc. 14 at pg. 84]. She avers that on June 26, 2024, a neighbor called to tell her the Property was being bulldozed. [*Id.*].

On July 11, 2024, the Office of City Manager issued a "Statement from Pigeon Forge City Manager Earlene Tester," which claimed the City had been subject to "relentless accusations" regarding the 362 Ogle Drive Property, and that the City had diligently attempted to reach a financial resolution with the owners, identifying Plaintiffs by name. [*Id.* at pg. 86]. The Statement claimed the Pigeon Forge City Commission had approved the final Westside Connector route as going through the Property on November 22, 2021. [*Id.*].

Finally, Plaintiffs allege "that even before the City fraudulently obtained the May 6, 2024 'Agreed Order,' Appalachian was trenching the Race's driveway." [*Id.* at ¶ 56]. Campsites for the Appalachian Springs campground now sit on part of the Property. [*Id.*]. The Westside Connector apparently does not. [*Id.* at ¶ 34].

On the basis of these allegations, Plaintiffs' First Amended Complaint [Doc. 14] asserts Count One against all Defendants, and Count Two against the City of Pigeon Forge and former Mayor David Wear.[4] Denominated "Conspiracy to Violate Plaintiffs' Fifth and Fourteenth Amendment Rights," brought under 42 U.S.C. §§ 1985 and 1983, Count One appears to assert more than one constitutional claim. [Doc. 14 at 15]. Plaintiffs allege the Defendants, acting under color of law, violated Plaintiffs' due process rights under the Fifth and Fourteenth Amendments,

---

[3] The Agreed Order was actually physically signed only by the City's attorney, Nathan Rowell, who signed for Plaintiffs' attorney "w. permission." [Doc. 9-2 at 3].

[4] Plaintiffs filed this action on January 23, 2025, originally naming only the City of Pigeon Forge and Mayor David Wear, in his personal and official capacities. [Doc. 1]. Plaintiffs filed the First Amended Complaint [Doc. 14] on June 4, 2025, adding Appalachian Springs, LLC, Keesha Wear, John Wear, Richard Perry, and Debbie Perry. On September 8, 2025, Kesha Wear was voluntary dismissed as a party. [Doc. 29]. The Clerk has entered default as to John Wear. [Doc. 51].

6

"as Defendants deprived the Plaintiffs of their property rights without due process of law." [*Id.*]. Plaintiffs assert they have suffered millions of dollars in damages, as well as extreme emotional distress and anguish, as they spent their life savings on the Property. [*Id.*].

For Count Two, Plaintiffs assert the City of Pigeon Forge and David Wear violated their First Amendment rights by retaliating against Plaintiffs for protected speech. [*Id.* at 16]. Specifically, they allege the City and Wear instituted and executed an unlawful condemnation proceeding and bulldozed their home. [*Id.*]. Plaintiffs allege these actions were motivated by Plaintiffs' exercise of their right to speak on matters of public concern, "namely the fact that the City of Pigeon Forge was masking a condemnation for public benefit when it [was] for private benefit." [*Id.*].

On September 30, 2025, Defendants Appalachian Springs, LLC, Debbie Perry, and Richard Perry (the "Appalachian Springs Defendants") filed a Motion to Dismiss [Doc. 34] for failure to state a claim. The Appalachian Springs Defendants contend they are not state actors, the FAC does not allege facts sufficient to establish they conspired with state actors, and the FAC fails to plead the elements of a claim under § 1985(3). [*Id.*]. Plaintiffs responded in opposition [Doc. 43], and no reply was filed.

On December 31, 2025, Defendants David Wear and the City of Pigeon Forge filed a Motion for Judgment on the Pleadings [Doc. 48], contending this action is barred by the *Rooker-Feldman* doctrine. If the Court finds subject matter jurisdiction exists, Wear and the City argue the Court should nonetheless abstain under either the *Younger* or *Colorado River* doctrines. [*Id.*]. Raising a factual attack to the existence of subject matter jurisdiction under *Rooker-Feldman*, Defendants have filed several documents from the state court condemnation proceeding. [Doc. 9-1 to 9-5]; [Doc. 48-1 and 48-2]. As the Motion for Judgment on the Pleadings [Doc. 48] challenges

7

the Court's authority to hear the Plaintiffs' claims, the Court addresses that motion first, before turning to the Motion to Dismiss [Doc. 34] of the Appalachian Springs Defendants.

## II.     MOTION FOR JUDGMENT ON THE PLEADINGS OF DAVID WEAR AND THE CITY OF PIGEON FORGE [DOC. 48]

### a.   Standard of Review

Defendants Wear and the City style their Motion [Doc. 48] as one for judgment on the pleadings under Rule 12(c). But a "Rule 12(c) motion is a decision on the merits that cannot be decided without first determining whether subject matter jurisdiction is proper." *Ogle v. Church of God*, 153 F. App'x 371, at 374-75 (6th Cir. 2005) (district court erred by converting a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction filed after an answer into a motion for judgment on the pleadings under Rule 12(c)). Similarly, federal abstention doctrines focus on whether the Court should exercise its jurisdiction, not whether the pleadings merit dismissal.

The Motion for Judgment on the Pleadings [Doc. 48] does not seek an adjudication on the merits, but a finding that the Court lacks subject matter jurisdiction under *Rooker-Feldman*. To that extent, the Motion [Doc. 48] is properly viewed as one for dismissal for lack of subject matter jurisdiction. Because it raises a factual attack on subject matter jurisdiction, the Court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside the pleadings." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).[5] When a defendant raises a factual attack on subject matter jurisdiction, "no

---

[5] "[F]ederal courts may also consider materials that are public records or otherwise appropriate for taking judicial notice without converting" a motion to dismiss to a Rule 56 motion. *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, at 925 (N.D. Ohio 2009). The documents attached to the Motion for Judgment on the Pleadings are both public records and, in several instances, central to Plaintiffs' claims.

presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review." *Ogle*, 153 F. App'x at 375.

### b. Positions of the Parties

Correctly applying *Rooker* and *Feldman* requires some understanding of Plaintiffs' claims and the injuries they assert. This proves somewhat challenging. The FAC is not a model of clarity, and neither party takes pains to identify the claims asserted or challenged with any specificity. Starting with the clearer case, all parties appear to understand Count II as a claim for retaliation for protected speech in violation of the First Amendment.

Count I is more difficult to decipher. Only one paragraph identifies a specific violation of Plaintiffs' rights: "Defendants' actions alleged herein violated the Plaintiffs' due process rights guaranteed by U.S. Const. amend V and XIV as the Defendants deprived the Plaintiffs of their property rights without due process of law." [Doc. 14 at ¶ 61].[6] Defendants David Wear and Pigeon Forge read the FAC as asserting "Fifth and Fourteenth Amendment takings claims against all named defendants couched as a 'conspiracy' claim," and a First Amendment retaliation claim. [Doc. 49 at 2]. Elsewhere, they acknowledge Plaintiffs' assertion of a due process claim. [*Id.* at 8, 9]. Plaintiffs' Response likewise references a 42 U.S.C. § 1985(3) conspiracy claim, a Takings Clause claim, First Amendment retaliation, and "a conspiracy to deprive them of their property in violation of 42 U.S.C. § 1983." [*Id.* at 8; Doc. 43 at 2]. In the briefing on Appalachian Springs's Motion to Dismiss [Doc. 34], Plaintiffs also argue they have stated a claim for deprivation of procedural due process. [Doc. 43 at 2].

---

[6] The remaining paragraphs recite portions of § 1983 or generically allege elements of a § 1983 claim.

9

For present purposes, the Court therefore construes the FAC as asserting claims for (1) violation of the Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment; (2) violation of the Fourteenth Amendment's procedural due process protections; (3) § 1983 civil conspiracy; (4) conspiracy to violate Plaintiffs' constitutional rights under 42 U.S.C. § 1985(3); and (5) First Amendment retaliation.[7]

A close analysis of this circuit's *Rooker* and *Feldman* jurisprudence is necessary to evaluate the relationship between Plaintiffs' claims and the Agreed Order of Possession.

### c. *Rooker*, *Feldman*, and § 1257(a)

Under 28 U.S.C. § 1257(a), the Supreme Court of the United States has jurisdiction over "[f]inal judgments or decrees rendered by the highest court[s] of a State" as to matters arising under federal law. 28 U.S.C. § 1257(a). In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court interpreted § 1257(a) as an implied bar on the jurisdiction of lower federal courts, an understanding reiterated in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine recognizes a "vanishingly narrow jurisdictional bar," *HPIL Holding, Inc. v. Zhang*, 168 F.4th 944, at 946 (6th Cir. 2026), "eliminate[ing] jurisdiction only over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," *id.* at 949 (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 281, 284 (1970)).

---

[7] The Takings Clause of the Fifth Amendment is "[a]pplicable to the States through the Fourteenth Amendment." *Wilkins v. Daniels*, 744 F.3d 409, 416-17 (6th Cir. 2014). The Fourteenth Amendment's Due Process Clause applies directly to the States. *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities, whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government.").

The United States Court of Appeals for the Sixth Circuit has recently emphasized just how narrow § 1257(a)'s jurisdictional bar truly is. *See HPIL Holding, Inc. v. Zhang*, 168 F.4th 944 (6th Cir. 2026). *Rooker* and *Feldman* "stand for the straightforward proposition that a lower federal court may not entertain a direct appeal to reverse or modify the judgment of a state court . . . [b]ut that is all the two cases stand for." *Id.* at 947 (cleaned up). They do not create supplemental doctrines of abstention, comity, or federal equity. *Id.* at 947-48. They "do not control the claim or issue preclusive effect of state-court judgments." *Id.* at 948. And – emphatically – the *Rooker-Feldman* doctrine "does not create an all-purpose mechanism for clearing dockets." *Id.* "When a court dismisses a case under *Rooker* and *Feldman*, it swims against a powerful doctrinal current." *Id.* at 949.

In *HPIL*, several minority shareholders of HPIL Holding successfully petitioned a state court for the appointment of a receiver. *Id.* at 946-47. The complaint was served on an old address of the company, a default judgment was entered, and a receiver appointed. *Id.* HPIL later sued in federal court, alleging that the petitioning shareholders "looted the corporation during the receivership proceeding," and, with the receiver, diluted the company's stock. *Id.* at 950. Following intervention by other shareholders, the state court set aside the default judgment and dismissed the receivership complaint because HPIL had not been properly served. *Id.* at 947. But the court did not vacate any of the receiver's actions. *Id.*

HPIL sued the shareholders who brought the receivership petition, the receiver, and the purchaser of the majority of the company's stock, among others. *Id.* The complaint alleged that the shareholder and receiver "colluded to seize control of HPIL by intentionally failing to provide the corporation with proper notice of the receivership petition." *Id.* The district court *sua sponte*

11

dismissed the case for lack of subject matter jurisdiction, reasoning that HPIL's lawsuit required review of prior state-court judgments and was thus barred by *Rooker-Feldman*. *Id.*

The Sixth Circuit reversed in no uncertain terms. After outlining the narrow contours of § 1257(a)'s jurisdictional bar, the Court considered (1) whether the plaintiff complained of injuries caused by a state court judgment, and (2) whether the lawsuit invited district court review and rejection of state court judgments.

First, the court explained that "[c]hallenges to wrongdoing in the proceedings leading to a judgment do not challenge the judgment itself." *Id.* at 949. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). HPIL alleged that the receivership petition was intentionally filed without proper service of process. That injury arose from "the conduct of individuals who happened to participate" in the receivership decision. *Id.* at 949-50. "The judgment served only as a means through which the defendants harmed the plaintiff, not as an independent source of harm." *Id.* at 950. Similarly, HPIL's claim that the minority shareholder, receiver, and purchaser of the company in the receivership looted the corporation and damaged its creditworthiness was not an injury caused by the state court's receivership order. While the state court authorized appointment of the receiver, "[i]t did not direct or authorize corporate fraud." *Id.* "The independent tortious conduct of a third-party breaks the chain of causation." *Id.* The court held that "any injury to HPIL flows not from the state-court judgment but from the independent misconduct of the defendants," so § 1257(a) did not bar the claims. *Id.*

In so holding, the Sixth Circuit highlighted its prior decision in *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). *McCormick* involved a series of property transactions, divorce proceedings, and a receivership. In broad strokes, the plaintiff alleged that certain defendants

12

committed fraud and misrepresentation in a divorce proceeding, and intentionally failed to make the plaintiff a party to litigation concerning an order of receivership. *Id.* at 392. She consequently had no opportunity to assert her rights over a disputed property. *Id.* The district court dismissed based on *Rooker-Feldman*, and the Sixth Circuit reversed: "None of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law." *Id.* Rather, the plaintiff asserted "*independent claims* that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means." *Id.* "[T]hese independent claims may deny a legal conclusion of the state court, *i.e.*, the [property] is the sole property of [the] estate; however, this fact does not lead to a divestment of subject matter jurisdiction in the federal courts." *Id.* As in *HPIL Holding*, the *McCormick* court emphasized "that preclusion law is the appropriate solution for these independent claims." *Id.* However, "if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself." *Id.* at 394.

Second, the *HPIL* court found that the federal lawsuit did not invite review and rejection of the state-court judgments. *Id.* at 950. The district court reasoned that because HPIL's lawsuit requested a form of relief that the state court had denied, *Rooker* and *Feldman* eliminated federal jurisdiction. *Id.* at 951. To the contrary, the Sixth Circuit explained that just because a state court order "ratified, acquiesced in, or left unpunished some source of injury does not mean that the state court *caused* the injury." *Id.* (citation and punctuation omitted). Nor did the lawsuit invite review and rejection of the state court's order, even though the federal action "cast doubt on an implicit holding of the state court." *Id.* "So long as it presents an 'independent claim,' HPIL is free to try to deny a legal conclusion that a state court has reached without facing a § 1257(a) barrier." *Id.*

13

(cleaned up, citation omitted). This was so even though the complaint sought a declaration that voided any document granting authority to the purported new CEO of the company, since the related judgment had already been vacated. "Neither *Rooker* nor *Feldman* nor § 1257(a) applies 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Id.* (quoting *Exxon*, 544 U.S. at 284).

*HPIL Holding* joins a long line of controlling cases in explaining that "Section 1257 eliminates only a disguised form of appellate jurisdiction in the inferior federal courts." *Id.* at 951. The HPIL lawsuit did not "use the word 'appeal' or 'certiorari' or any equivalent word," and did "not even look like an appeal." *Id.* at 961. It challenged different wrongs from the previous state-court lawsuits, requested different forms of relief, and sought relief from different parties. *Id.* "All of that means that neither *Rooker* nor *Feldman* nor § 1257 has anything to do with this case." *Id.*

### d. Section 1257(a) Jurisdictional Challenge

As Defendants argue, Plaintiffs' Fifth Amendment Takings Clause challenge, however characterized, is at the heart of the FAC. So the Court begins with that central claim. There are generally two types of Takings Clause claims: "challenges to the public-use requirement and challenges to the just-compensation requirement." *Wilkins v. Daniels*, 744 F.3d 409, 416-17 (6th Cir. 2014). "Public-use challenges assert that in effecting the taking, the government exceeded its permissible scope of authority under the Constitution; the action is invalid regardless of whether compensation is provided." *Id.* at 417. Just compensation challenges, meanwhile, "concede that the government acted within the scope of its authority," but seek "just compensation" for the affected party. *Id.*

Plaintiffs clearly assert a Takings Clause claim, though it is not clear whether they are pursuing just compensation or only challenging the public-use requirement.[8] Neither party discusses the distinction. Regardless, the state court has not ruled on just compensation, so neither *Rooker*, *Feldman*, nor § 1257(a) have any application.

The public-use challenge is a harder question, complicated by the mismatch between Plaintiffs' cause of action and the relief they seek. For their part, Defendants misapprehend the scope of § 1257(a)'s jurisdictional bar, directing nearly all of their argument to the Takings Clause claim and discussing the remaining claims in only the most general terms. Many of their arguments go to preclusion, which they do not raise. They argue, for example, that Plaintiffs previously made the same arguments in state court that they make here, consented to the Agreed Order of Possession, agreed to the transfer of possession to the City, and that the FAC "directly implicates" the eminent domain proceedings. [Doc. 53 at 2, 4]. At best, these contentions are only marginally related to *Rooker*, *Feldman*, and § 1257(a). That the Order of Possession was agreed to is irrelevant to a *Rooker-Feldman* analysis, as is Plaintiffs' repetition of arguments previously raised and rejected. Similarly, Defendants' contention that Plaintiffs cannot accept funds on deposit while simultaneously challenging the validity of the Agreed Order of Possession may relate to estoppel or preclusion, but it has little to do with the Court's jurisdiction.[9]

---

[8] While Plaintiffs seek damages and reference the requirement of just compensation for a government taking under Tennessee law and the Fifth Amendment, they do not expressly seek just compensation in their request for relief. Yet elsewhere, it appears the parties may understand Plaintiffs as seeking just compensation in this Court. Plaintiffs argue, for example, that Defendants conspired to deprive them of "their Fifth Amendment right to just compensation." [Doc. 43 at 8]. The City of Pigeon Forge, meanwhile, argues the Court should abstain from exercising jurisdiction because, *inter alia*, the Circuit Court of Sevier County has set a trial on just compensation, and "[m]uch or all" of the work leading up to that hearing will have to be performed again if this case moves forward. [Doc. 49 at 14].

[9] Defendants Wear and the City of Pigeon Forge do not seek to bind Plaintiffs to the Agreed Order of Possession in any other way. Claim or issue preclusion might have been a better vehicle for

15

Defendants say Plaintiffs cannot challenge the state court's "determination that the taking was for a constitutionally sufficient public purpose." [Doc. 49 at 7]. Initially, no such determination is explicit in the Order of Possession. The Order states only that the City "is entitled to exercise eminent domain," and grants ownership and possession of the Property to the City. [Doc. 9-2 at 1]. And *HPIL Holding* makes clear that as long as Plaintiffs assert independent claims, those claims "may deny a legal conclusion of the state court," without "divestment of subject matter jurisdiction in federal courts." *HPIL Holding*, 451 F.3d at 392. *Rooker* and *Feldman* do not eliminate jurisdiction to "implicitly undermine" judgments, and they apply to "judgments, not reasoning." *Id.* at 952. Defendants nonetheless urge that "Plaintiffs' claims are inextricably intertwined with the state court's judgment." [Doc. 49 at 7]. But the Sixth Circuit has clarified that "the phrase 'inexplicably intertwined' only describes the conclusion that a claim asserts an injury whose source is the state court judgment." *Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 440 (6th Cir. 2006). Defendants' contention that Plaintiffs' claims would "impugn" the validity of the state court order thus misunderstands the "slender" jurisdictional bar of § 1257(a), which "eliminates only a disguised form of appellate jurisdiction in the inferior federal courts." *HPIL Holding*, 168 F.4th at 949, 951.

What Plaintiffs cannot do in this Court is seek to reverse or vacate the judgment of the state court. While Plaintiffs do not explicitly seek such relief, their cause of action does. If successful, a public-use takings challenge invalidates the taking. *Wilkins*, 744 F.3d at 417 ("Public-use

---

resolving this issue, "because anything *Rooker* and *Feldman* can do, preclusion can do better." *HPIL Holding*, 168 F.4th at 949. But Defendants did not plead preclusion as an affirmative defense and do not raise it now. Possibly they cannot. *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense. . . . Ordinarily, it is incumbent on the defendant to plead and prove such a defense."). Regardless, the Court has no occasion to consider whether preclusion applies.

challenges assert that in effecting the taking, the government exceeded its permissible scope of authority under the Constitution; the action is invalid regardless of whether compensation is provided."); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void."). The legal consequence of a successful public-use challenge is invalidation of the exercise of eminent domain. Plaintiffs cannot plead around that result by seeking damages instead.

The taking here was also effected pursuant to the state court's order. "[I]f a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself." *McCormick*, 451 F.3d at 394. The Agreed Order of Possession explicitly granted possession of the Property to the City, and the City effectuated the taking pursuant to that Order. If successful, Plaintiffs' public-use Takings Clause claim would invalidate the City's actions, not just undermining the Order of Possession, but requiring this Court to vacate or reverse the state court's grant of possession of the Property to the City. This, then, is one of the rare "disguised appeals" that § 1257(a) removes from the jurisdiction of the inferior federal courts.

The Sixth Circuit's holding in *RLR Investments, LLC v. City of Pigeon Forge*, 4 F. 4th 380 (6th Cir. 2021), confirms this result. RLR Investments explicitly sought a judgment that an order of possession was unconstitutional. *Id.* at 388. RLR argued that it avoided *Rooker-Feldman* by bringing constitutional claims under § 1983, but the Sixth Circuit found that its injuries still stemmed from the state court judgment: "RLR would only prevail on its § 1983 claims or constitutional claims if the state court were wrong, so the Order is the source of the injury." *Id.*

17

The court further found the City's conduct was not independent from the order, because "[t]he City took RLR's property as a consequence of the Order, not independently." *Id.* at 388-89.

In so holding, the Court acknowledges that the jurisdictional exception recognized in *Rooker* and *Feldman* is "vanishingly narrow." But seeking invalidation of a government taking authorized by and effectuated pursuant to a state court order surely still falls within that limited bar. And Plaintiffs cannot avoid that result by seeking relief that does not "match" their cause of action. Because a successful public-use takings claim necessarily voids the taking, Plaintiffs cannot bring that claim in this Court.

Plaintiffs may, however, challenge the legal reasoning and underpinnings of the Order without divesting the Court of jurisdiction, provided they do so in the context of independent claims. While they cannot seek to reverse, vacate, or otherwise appeal the Order of Possession, they can challenge Defendants' conduct before and during the condemnation proceeding in seeking to prove their independent claims. *HPIL Holding* and *McCormick* make that clear: "That a plaintiff's lawsuit would undermine a judgment's legal underpinnings implicates preclusion, not jurisdiction." *HPIL*, 25-1595 at pg. 8 (citation and punctuation omitted). That means their conspiracy claims, due process claim, and First Amendment retaliation claim are not barred by § 1257(a).

"[T]o differentiate between claims attacking state-court judgments, which are barred by *Rooker-Feldman*, and independent claims," the Court focuses on "the source of the injury plaintiff alleges in the federal complaint." *Brown*, 206 F. App'x at 439. The First Amendment retaliation claim is the clearest case. It alleges Defendants' conduct in filing the condemnation action and promptly bulldozing the residence was done as retaliation against Plaintiffs for the exercise of their First Amendment rights. Nothing about that claim requires review and rejection of the state court's

18

Order of Possession. It is not the state court order itself, but how and why Defendants sought the order and how they acted on it that allegedly occasioned Plaintiffs' injury.

As to Plaintiffs' conspiracy claims under § 1983 and § 1985(3), Plaintiffs allege Defendants conspired to deprive them of their property rights, and used the mechanisms of government and the legal system to do so. "[A] complaint in which the plaintiff contends he was injured by the defendants, rather than by the state court decision itself, is not barred by *Rooker-Feldman* . . .." *Brown*, 206 F. App'x at 439. While the end result is the same – the loss of the Property – the legal source of the injury identified in the FAC is Defendants' conduct prior to and during the condemnation proceeding, not the state court order. And while Plaintiffs have to prove a constitutional deprivation to state a § 1983 conspiracy claim, *Rooker-Feldman* does not bar the claim simply because "relief is predicated on denying the legal conclusion reached by the state court." *Id.* Like the plaintiffs in *McCormick*, Plaintiffs' ultimate injury is the loss of the property, but the source of the injury is Defendants' misconduct. *See* 451 F.3d at 392 (no jurisdictional bar where plaintiffs asserted "*independent claims* that [the] state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means").

Similarly, Plaintiffs' procedural due process claim is not a disguised appeal. As with their conspiracy claims, Plaintiffs allege the source of their injury is Defendants' conduct before and during the eminent domain proceeding, not the Order of Possession itself. Plaintiffs allege the City gave inadequate notice of the proposed condemnation, violated eminent domain procedures, and fraudulently obtained the Order of Possession. [Doc. 14 at ¶ 14, ¶¶ 48-56]. "The judgment served only as the means through which the defendants harmed the plaintiff, not as an independent source of harm." *HPIL Holding*, 168 F. 4th at 950; *see Brown*, 206 F. App'x at 439-40 (claim that final decree of foreclosure was obtained through fraud not barred by § 1257(a) where source of injury

19

was not decree but "the actions of various people involved in the mortgage foreclosure proceedings").[10]

Adjudication of the due process claim would not require review and rejection of the state court's order either. Plaintiffs do not seek possession of the Property or ask the Court to take any action with respect to the Order of Possession.[11] They seek compensatory damages, which are available for a procedural due process violation. *See Nationwide Recovery, Inc v. City of Detroit*, 163 F.4th 977, 989 (6th Cir. 2025) (explaining when compensatory damages are available for procedural due process claims). And unlike their public-use Takings Clause claim, a favorable ruling on the due process claim would not necessitate invalidation of the state court order. As the court recognized in *HPIL Holding*, the Sixth Circuit's caselaw "underscore[s] the distinction between judgments and antecedent misconduct in the legal process." *HPIL Holding*, 168 F.4th at 950.

After careful consideration, the Court finds it lacks jurisdiction over Plaintiffs' public-use Takings Clause claim under § 1257(a). Plaintiffs' remaining claims do not ask the Court to review and reject the Agreed Order of Possession, and their alleged injuries arise from the conduct of third

---

[10] Moreover, the Supreme Court has explained that procedural due process is an "absolute right" in that it "doesn't depend on the merits of a claimant's substantive assertions." *Id.* at 989 (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978)). So "procedural due process rights can be deprived even when the complained-of conduct isn't shown to have caused actual injury." *Id.* That bolsters the conclusion that violation of Plaintiffs' due process rights is properly viewed as an injury separate from the deprivation of the Property.

[11] In alleging the City did not follow its charter and other procedures, Plaintiffs do allege "[t]he City of Pigeon Forge acted *ultra vires*, and any Orders should be void." [Doc. 14 at ¶ 39]. The City does not seem to have issued any "orders," and the state court's order has no apparent connection to how the City went about selecting the site for condemnation. Whatever "Orders" Plaintiffs are referring to here, they only relief they seek are damages and attorney's fees and expenses. [*Id.* at pg. 16].

20

parties, not the state court's order. The implicit jurisdictional bar of § 1257(a) therefore does not apply.

### e. Application of Federal Abstention Doctrines

Defendants Wear and the City of Pigeon Forge next argue the Court should abstain from exercising jurisdiction under either *Younger v. Harris*, 401 U.S. 37 (1971), or *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Abstention is not warranted under either doctrine.

"The *Younger* doctrine is a judicial creation born from the principles of equity, comity, and federalism." *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017). "It permits federal courts to withhold authorized jurisdiction in certain circumstances to avoid undue interference with state court proceedings." *Hill*, 878 F.3d at 204. Courts "are to treat *Younger* as a limited carve-out to federal courts' virtually unflagging obligation to exercise their jurisdiction." *Id.* (citation and punctuation omitted).

*Younger* requires a two-step analysis. The doctrine only applies if the state proceeding falls into one of three categories: (1) an ongoing state criminal prosecution; (2) certain civil enforcement proceedings that are akin to criminal prosecutions; and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). "If the Court finds that a *Younger* proceeding is ongoing, it then considers the Supreme Court's *Middlesex* factors." *Klopp v. Ky. Educ. Prof'l Standards Bd.*, Civil No. 3:23-cv-00036, 2024 WL 1180939, at *3 (E.D. Ky. March 19, 2024); *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc'n*, 457 U.S. 423 (1982).

21

Defendants argue the condemnation proceeding falls into the third *NOPSI* category as a civil proceeding uniquely in furtherance of the state courts' ability to perform their judicial functions. [Doc. 49 at 10-11]. They argue that regardless of how Plaintiffs have pleaded their claims, "the substance of their allegations necessarily implicates the ongoing state court proceedings which involve judicial determinations regarding public use, compensation, and the administration of funds held by the state court pursuant to its orders." [*Id.* at 10]. The Court is unpersuaded.

*Younger*'s application to civil proceedings is "narrow and exist[s] only in a few exceptional circumstances." *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir. 2017). What remains of the condemnation proceeding is the issue of just compensation. Nothing about that proceeding relates to "the judiciary's ability to enforce its orders." *Id.* at 369; *see FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, at 290 (6th Cir. 2018) (abstention unwarranted where Ohio administrative proceeding had "no relation to civil contempt orders, state rules for posting bond pending appeal, or any other orders that are uniquely in furtherance of the judicial function of the Ohio courts"). That Plaintiffs seek no injunctive relief here further suggests *Younger* does not apply. *See Blake v. Wells Fargo Bank, NA*, 917 F.Supp. 2d 732 (S.D. Ohio 2013) (*Younger* abstention unwarranted where plaintiff did not seek injunctive relief as to state foreclosure proceedings). A just compensation claim is not exceptional, nor is its adjudication uniquely in furtherance of the state court's ability to perform its judicial functions. As a *Younger* proceeding is not ongoing, the Court need not consider the *Middlesex* factors.[12]

---

[12] Even if analysis of the *Middlesex* factors were appropriate, abstention would not be. Defendants cannot show that the state condemnation proceeding will provide Plaintiffs with an adequate opportunity to raise all their constitutional claims. *See Doe v. Univ. of Ky.*, 860 F.3d at 369 (citing *Middlesex*, 457 U.S. at 432-34). As Plaintiffs point out, "a Tennessee eminent domain action is a specialized proceeding focused primarily on determining the fair market value of the condemned

22

Next, Defendants argue the Court should abstain under *Colorado River*. While *Younger* abstention is animated by "principles of equity, comity, and federalism," *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017), *Colorado River* abstention "rests on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citation and punctuation omitted; cleaned up). The doctrine applies only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813. "If there is any substantial doubt that parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006) (quoting *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005)).

"Before the *Colorado River* doctrine can be applied, the district court must first determine that the concurrent state and federal actions are actually parallel." *Romine*, 160 F.3d at 339 (citing *Crawley v. Hamilton Cnty Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984)). If they are, the court then decides whether to defer to the concurrent jurisdiction of the state court, considering the eight factors identified by the Supreme Court in *Colorado River*.

The state condemnation action is not a parallel proceeding. "Two actions are not parallel merely because they arise out of the same basic facts." *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, at 603 (W.D. Tenn. 2011). As both parties recognize, a condemnation action is a specialized proceeding under Tennessee law. The only issue remaining is just compensation. Plaintiffs here assert multiple constitutional claims that were not and could

---

property." [Doc. 52 at 7]. Plaintiffs could not litigate their §§ 1983 and 1985 conspiracy claims, due process claim, or First Amendment retaliation claim in the remaining just compensation hearing.

not have been asserted in the condemnation action. While Plaintiffs and the City of Pigeon Forge are parties to the condemnation action, the FAC names six additional Defendants. With Plaintiffs' public-use Takings Clause claim to be dismissed for lack of jurisdiction, the only potential overlap would be on the issue of just compensation, to the extent Plaintiffs even raise that issue here. As to that claim, "[o]nce one court reaches final judgment, preclusion law applies." *RLR Investments*, 4 F.4th at 394. The issues presented in this case will remain largely if not entirely unresolved once the state court litigation concludes. So abstention would do little to avoid piecemeal litigation or conserve judicial resources.

Even assuming the actions are parallel, balancing the *Colorado River* factors counsels against abstention. These factors include: "(1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction." *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 929 (N.D. Ohio 2021) (citing *Romine*, 160 F.3d at 340-41).

The Circuit Court of Sevier County has jurisdiction over the funds on deposit with its Clerk of Court, which are being held pending a final decision on just compensation. Plaintiffs here seek damages as to multiple claims, not the release of the funds on deposit. So the first factor does not point clearly in either direction. Second, while Defendants show that the Property and many witnesses are located in Sevier County, they are also located in the Eastern District of Tennessee. That consideration is also neutral. Third, the avoidance of piecemeal litigation weighs against abstention, since most of Plaintiffs' federal claims are not before the state court. On the fourth

factor, the state court was the first to obtain jurisdiction over the just compensation issue, but again, it is unclear if Plaintiffs are even pursing that claim here, and Plaintiffs assert multiple other claims.

Fifth, "the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, at 26 (1983). Plaintiffs' claims are governed by federal law, weighing heavily against abstention. Sixth, the state court cannot protect Plaintiffs' constitutional rights as no due process, First Amendment, or conspiracy claim is before it, nor does it appear that they could be asserted in the context of a just compensation hearing. On the seventh factor, the fact that state proceeding is further along is not persuasive because the cases do not involve the same claims. For the same reason, the existence of concurrent jurisdiction does not weigh in favor of abstention where most of Plaintiffs' constitutional claims are not before the state court.

All told, abstention is not warranted under *Colorado River*. If there is "any doubt regarding the parallel nature of the state court suit," it "should be resolved in favor of exercising jurisdiction." *Chellman-Shelton*, 197 F. App'x at 395 (cleaned up; citation omitted).

Accordingly, the Motion for Judgment on the Pleadings [Doc. 48] of Defendants David Wear and the City of Pigeon Forge will be **GRANTED IN PART** as to Plaintiffs' public-use Takings Clause challenge. The Court lacks subject matter jurisdiction over that claim under § 1257(a) and it will be **DISMISSED**. Defendants' Motion [Doc. 48] will be **DENIED** in all other respects.

### III.  MOTION TO DISMISS OF APPALACHIAN SPRINGS DEFENDANTS

#### a.  Standard of Review

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted).

25

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 575 (6th Cir. 2007) (quoting *Ashcroft*, 556 U.S. at 678).

### b. Positions of the Parties

Defendants Appalachian Springs, LLC, Richard Perry, and Debbie Perry (in § III, "Defendants") move to dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6) for failure to state a claim. Their supporting memorandum lists the allegations against them, states the standard of review, and then presents three short paragraphs of argument. [Doc. 35]. The Appalachian Springs Defendants first contend they are not state actors within the meaning of § 1983 and that the FAC alleges no facts suggesting they acted jointly with state officials to deprive Plaintiffs of any rights. [*Id.* at 3]. Second, they contend Plaintiffs have not alleged specific facts showing a shared plan as required to establish a civil conspiracy under § 1983. [*Id.* at 4]. Third, they argue Plaintiffs cannot state a § 1985 claim because they fail to plead facts showing a "meeting of the minds" between these Defendants and any state actor.

As to their § 1983 claims, Plaintiffs point to specific allegations in the FAC that suggest a single plan, a shared conspiratorial objective, and overt acts in furtherance of that plan. [Doc. 43 at 6-7]. Based largely on the same conduct, Plaintiffs show they have adequately pleaded a conspiracy under § 1985(3). [*Id.* at 8]. Finally, Plaintiffs take issue with the movants' contention

that the FAC is conclusory, arguing it provides a "detailed factual narrative" that is more than sufficient to survive a Rule 12(b)(6) motion.

The motion to dismiss is as sparse as they come, containing at most three to four very short paragraphs of argumentation that do little more than suggest possible deficiencies. [Doc. 35]. Defendants cite a handful of cases, but without so much as a parenthetical to explain how or why those cases support dismissal. And because the Appalachian Springs Defendants did not file a reply brief, the Court does not have the benefit of their response to Plaintiffs' more detailed argument. This leaves all the heavy lifting of analysis to the Court. And that a movant cannot do. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (*quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). Indeed, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* In short, it is not entirely clear that the Appalachian Springs Defendants have properly placed the sufficiency of the pleadings before the Court. Nonetheless, the Court addresses each of the three issues Defendants raise in turn.

### c. Section 1983 Claims

#### 1. State Actor Requirement

To state a claim under 42 U.S.C. § 1983, a plaintiff must show "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). Yet "[i]t is well settled that private parties that perform fundamentally public functions, or who jointly participate with a state to engage in concerted activity, are regarded as

27

acting 'under color of state law' for purposes of § 1983." *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008) (quoting *Bartell v. Lohiser*, 215 F.3d 550, 556 (6th Cir. 2000)); *see Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, at 937 (1982) "[T]he party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.")

As Plaintiffs argue, "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000); *see also Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985) ("Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983."); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, at 941 (1982) ("[W]e have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment.").

While the Sixth Circuit has developed several tests to determine whether a private party may be held responsible under § 1983, the parties do not raise any of them.[13] Defendants' sole argument is that the FAC alleges "no facts suggesting that they acted jointly with state officials in depriving Plaintiffs of rights." [Doc. 35 at 3]. The Court disagrees.

Taking the allegations of the FAC as true on this Rule 12(b)(6) motion, Plaintiffs show that the Appalachian Springs Defendants, Mayor Wear, and John Wear had long planned to construct a commercial campground adjacent to Property. Plaintiffs point to the development plans the

---

[13] *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (explaining the Sixth Circuit's use of "(1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or "nexus" test.").

Wears obtained in mid-2019, which indicated the campground project at 370 Ogle Drive would require intrusion onto the Property. [*Id.* at 32; *id.* at pg. 59 *et seq.*]. Thereafter, Appalachian Springs was formed and acquired 370 Ogle Drive and two other nearby properties.

Plaintiffs show that when routes for the Westside Connector were originally proposed by the City, none required condemnation of the Property, but some or all would have affected the campground Appalachian Springs aimed to develop. [*Id.*]. After a public meeting at which the Connector's impact on the campground was raised, the Assistant City Manager of Pigeon Forge emailed the City's outside engineer working on the Connector project and asked him to meet with the Mayor's brother and Appalachian Springs, LLC, member John Wear. The requested meeting was "regarding the Campground [that] is being built on the Westside Connector route[.]" [*Id.* at 54]. Sometime after this meeting, Plaintiffs suggest, the proposed route for the Westside Connector was changed so that it would go through their Property instead of the Appalachian Springs campground site. Plaintiffs allege that Assistant City Manager Brackins later lied about what public notices showed, as did the former Mayor. They allege Mayor Wear falsely claimed the map in City Hall showed the Connector going through the Property, when in fact the City directed the outside engineering company to change the proposed route in 2023. According to Plaintiffs, Appalachian Springs "was trenching the Race's driveway" before the Order of Possession was entered, and campsites for the Appalachian Springs campground now sit on part of the Property, not the Westside Connector. [*Id.* at ¶ 56].

At the pleadings stage, these allegations of joint participation / conspiracy and the inferences reasonably drawn therefrom are sufficient to permit Plaintiffs to state a § 1983 claim

against the otherwise-private Appalachian Springs Defendants.[14] They are certainly sufficient to survive a barely supported Rule 12(b)(6) motion. Particularly significant here is the allegation that the Westside Connector was originally proposed to go through the Appalachian Springs development, that the City arranged a meeting between its engineer and a member of Appalachian Springs, and that sometime after that meeting, the proposed route of the Westside Connector was changed to spare the campground.

Finally, while Defendants note the scarcity of allegations against them, they do not argue or provide any legal support for the proposition that membership in Appalachian Springs is insufficient to connect its members to the actions of the LLC or its other members. Similarly, while they contend that only allegations dating from Plaintiffs' acquisition of the Property onward are relevant, they cite no legal authority for that contention.

### 2. Sufficiency of § 1983 Civil Conspiracy Allegations

Next, Defendants say Plaintiffs fail to allege a conspiracy or specific facts showing a shared plan. [Doc. 35]. "A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To state a civil conspiracy claim, Plaintiffs must allege that "there was a single plan, that the alleged coconspirators shared in

---

[14] Moreover, the Appalachian Springs Defendants could likely be considered state actors for § 1983 purposes under the "state compulsion" test. That test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Lansing*, 202 F.3d at 829. If, as Plaintiffs allege, the City of Pigeon Forge altered the route of the Westside Connector to allow Appalachian Springs to develop its campground project, orchestrated a meeting between a member of the company and the engineer planning the project, directed the city engineer to alter the route in the CAD program, and then altered public notices to reflect a new route, that level of encouragement by the City would seem to satisfy the state compulsion test, at least at the motion to dismiss stage.

the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy." *Id.* at 944.

Defendants contend the FAC "offers only conclusory allegations of a 'conspiracy' without identifying any meetings, communications, or acts by any of the Appalachian Springs Defendants in furtherance of such an agreement." [Doc. 35 at 4]. But the FAC explicitly alleges both a meeting and communications between the City of Pigeon Forge and one or more members of Appalachian Springs regarding the campground project and the Westside Connector route. "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy and each conspirator need not have known all the details of the illegal plan or all of the participants involved." *Hooks*, 771 F.2d at 944. For essentially the same reasons that Plaintiffs may bring their § 1983 claims against these Defendants, Plaintiffs have sufficiently alleged a single plan, a general conspiratorial objective, and several overt acts in furtherance of that objective.

### 3. Sufficiency of § 1985(3) Claim

"To establish a claim under 42 U.S.C. § 1985(3), a plaintiff must prove (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, at 839 (6th Cir. 1994).[15] Appalachian Springs and the Perrys contend that the FAC fails to state a § 1985(3) claim

---

[15] The Sixth Circuit has at times held that a § 1985(3) plaintiff "must also establish that the conspiracy was motivated by a class-based animus." *Johnson*, 40 F.3d at 839. Defendants do not raise that issue either, so the Court does not address it here.

against them because it does not plead facts showing a "meeting of the minds," but only "[v]ague references to conspiracy." [*Id.* at 4].

It's not clear which element of a § 1985(3) claim Defendants are challenging, and they again cite only one case without any explanation or analysis. That case, *Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987), was dismissed on summary judgment and did not include a § 1985(3) claim. The only relevant holding of *Gutierrez* was that "conspiracy claims must be pled with some degree of specificity" and that "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* at 1538. In *Gutierrez*, plaintiff alleged his termination was due to his refusal to "whitewash his investigation of city contracts," and that the defendants conspired against him to deprive him of his employment and reputation as punishment. *Id.*

Plaintiffs' conspiracy allegations are far more substantial than those in *Gutierrez*. Plaintiffs make concrete factual allegations to support their assertion that Defendants conspired to unlawfully deprive them of their Property. These include: purchases of property, requisition of a site plan that allegedly required use of the Property for the Appalachian Springs campground development, a City-orchestrated meeting with a member of Appalachian Springs and the City's engineer regarding the Westside Connector route and the campground, a change to the proposed Connector routes sometime after that meeting, insistence by a member of Appalachian Springs that the Connector was always slated to go through the Property, and development activity on the Property before Plaintiffs lost possession. Defendants appear to challenge the first and third elements of a § 1985(3) claim. At the pleadings stage, the Court finds that these concrete facts and the inferences reasonably drawn from those facts are sufficient to allege the existence of a conspiracy and overt acts in furtherance of that conspiracy.

32

## IV. CONCLUSION

To varying degrees, the quality of the parties' briefing severely complicated the Court's review of this matter. Plaintiffs raise complex constitutional arguments, but neither their briefing nor the FAC definitively identify exactly what claims they assert. The City of Pigeon Forge and David Wear likewise assert the applicability of *Rooker-Feldman* in highly generalized terms. They make no effort to tailor their arguments to any claim other than public use, relying on a vague sense of factual adjacency. A complex jurisdictional challenge like this requires far more precision. Meanwhile, briefing by the Appalachian Springs Defendants is so skeletal that they have only narrowly avoided waiving their arguments. The Court has nonetheless attempted to address the claims raised by the instant motions, as the parties appear to understand them. The parties are **ADVISED** that future briefing in this matter should clearly address the issues presented, include organized and legally-supported argument, and generally reflect a greater degree of care and precision.

For the foregoing reasons, the Motion for Judgment on the Pleadings [Doc. 48] of Defendants David Wear and the City of Pigeon Forge is **GRANTED** as to Plaintiffs' public-use Takings Clause claim, which is **DISMISSED** for lack of subject matter jurisdiction. The Motion [Doc. 48] is **DENIED** in all other respects.

The Motion to Dismiss for Failure to State a Claim [Doc. 34] of Defendants Appalachian Springs, LLC, Richard Perry, and Debbie Perry is **DENIED**.

    **SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**
